HENRY H. HOUGHTON v. THE CHICAGO & GRAND TRUNK
RAILWAY COMPANY.

*Accident at railroad crossing—Duty to listen—Contributory negligence.*

1. A traveler is never justified in assuming that he can surely drive a certain distance, and cross a railroad track, before a train can reach the crossing, unless it be shown that he has had an uninterrupted view of the track for so great a distance as to justify such assumption.

2. Plaintiff is held to have been guilty of such negligence in failing to stop his team and listen for a fast train, which he knew was about due, while driving, after dark, a distance of 196 feet in approaching a railroad crossing, during which time his view of the track was obstructed, as to bar a recovery.[1]

Error to Genesee. (Newton, J.) Argued January 19, 1894. Decided March 20, 1894.

Negligence case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*Geer & Williams,* for appellant.

*R. C. Johnson (Gold & Johnson,* of counsel), for plaintiff.

HOOKER, J. The main question in this case is whether the plaintiff was guilty of contributory negligence under the undisputed facts in the case.

He was a farmer returning home from Flint, his market town, riding upon two boards laid upon his wagon, in company with a boy. He approached defendant's track at a point where he had a good view of the same for a half mile to the east, for 40 or 50 rods, until he reached

---

[1] For cases bearing upon the duty of looking and listening before crossing a railroad track, see *Gardner v. Railroad Co.,* 97 Mich. 240, 241, and note; *McDuffie v. Railway Co.,* 98 Id. 356.

a point 196 feet from the highway crossing, from which point to the railroad grounds the view of the track to the east was obscured by buildings. At a point 32 feet from the track it again became visible, ordinarily, but there was evidence, and the jury found specially, that upon this occasion a long train of freight cars was standing upon an intervening siding, which made it impossible for plaintiff to see the track,—except a very small portion of it, which became momentarily visible as he crossed the line of the right of way,—until the side track was crossed, when the horses, if not the front wheels of the wagon, would be upon the defendant's main track. At a distance of half a mile east was a cut where, and beyond which, a train could not be seen. The plaintiff had a steady team, and approached this crossing after dark knowing that a fast train was due about this time. He watched for the train, and listened, as did also the boy, down to the point 40 or 50 feet from the track, where he saw that the freight cars prevented his seeing the road to the east. Two other vehicles crossed the track a short time before he reached it, the driver of one of which shouted to him to look out. It does not appear that he heard the warning, from which it is reasonable to suppose that this team was some distance ahead of him. The first carriage was said by one witness to have been several rods from the track when the accident occurred. There was proof tending to show that no bell was rung or whistle sounded, sufficient to justify the submission of these questions to the jury. Some witnesses testified to hearing the train. The ground was frozen, and the wagons made some noise. The plaintiff did not stop to listen at any point. As the horses stepped on the main track he noticed the light upon them, and whipped them, but was struck and severely injured before he got quite across. From a verdict of $11,000 in plaintiff's favor the defendant appeals.

Counsel· for defendant contend that· the failure to stop·
and listen was contributory negligence, inasmuch as there
was no point at which a train could be seen for the last
196 feet, except a very narrow space at the line of defend-
ant's right of way, before the track was reached. The
plaintiff said that his hórses were walking part of the
time, and trotting some, and it is perhaps a reasonable
supposition that he was traveling about 3 or 4 miles an
hour. The train is shown to have run from 45 to 60·
miles an hour, or about· 15 times as fast as he traveled,
which would make about 3,000 feet for the train to 200
feet for the wagon,—about 300 feet more than half a mile
that the train might travel after the plaintiff's view was
obscured. So it is plain enough that, when the plaintiff
passed behind the buildings, the train was not yet in sight,
and unless we can say that it was reasonable for him to
suppose he could get across before a train could cover the
half mile from the cut, or because of the fact that teams
ahead were crossing, it was negligent to attempt to cross
without stopping to listen, under repeated. decisions.
*Lake Shore & Mich. Southern R. R. Co. v. Miller*, 25
Mich. 293; *Brady v. Railroad Co.*, 81 Id. 616; *Van Auken
v. Railway Co.*, 96 Id. 307; *Shufelt v. Railroad Co.*, 96
Id. 327; *Mynning v. Railroad Co.*, 64 Id. 93. See, also,
*Kelly v. Railroad Co.*, 88 Mo. 534; *Henze v. Railway Co.*,
71 Id. 636; *Chase v. Railroad Co.*, 78 Me. 346; *Aiken v.
Railroad Co.*, 130 Penn. St. 380; *Railroad Co. v. Beale*,
73 Id. 504; *Railroad Co. v. Heileman*, 49 Id. 60; *Green-
wood v. Railroad Co.*, 124 Id. 572; *Railway Co. v. Stom-
mel*, 126 Ind. 35; *Merkle v. Railroad Co.*, 49 N. J. Law,
473; *Railroad Co. v. Holmes*, 3 Wash. Ter. 202. It is.
manifest that he was not justified in concluding that he·
could certainly go 196 feet and cross the track before a
train could reach the crossing, for a traveler is never jus-
tified in such an assumption unless it be shown that he.

has had an uninterrupted view of the track for so great a distance as to make it certain. The fact that the view was cut off- called for increased caution upon the part of the plaintiff, and the case resolves itself to this question: Had he a right to disregard this duty by reason of the fact that the other teams preceded him across the track? If so, it is because he had a right to expect a warning under circumstances which would enable him to see or hear it in time to stop, or because the fact of such crossing would justify him in the belief that no train was near. But the plaintiff himself states that he neither saw Jenkins cross nor heard his warning. He did not know how far ahead of him he was, and was not paying any attention to him, because he was listening for the train. Thus it clearly appears that the crossing of Jenkins is not a factor in the case, which leaves it within the principle of the cases cited above. The jury should have been directed to render a verdict for the defendant.

The judgment will therefore be reversed. No new trial will be ordered, as plaintiff's own testimony shows that he cannot recover.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred with HOOKER, J. LONG, J., concurred in the result.