OSCAR ANDERSON, Appellee, v. UNITED STATES RAILROAD ADMIN-
ISTRATION et al., Appellants.

RAILROADS:   Accidents at Crossings—Attempt to Avoid Train.  The
1  driver of a conveyance who, in an emergency, attempts to pass in front
   of an immediately approaching railway train is not necessarily guilty
   of contributory negligence.  So held where the crossing, though fa-
   miliar to the driver, was obscured, and where the train was not dis-
   covered until momentarily before the collision.   (See Book of Anno.,
   Vol. 1, Sec. 8018, Anno. 33 et seq.)

RAILROADS:   Accidents at Crossings—Signals—Positive and Negative
2  Testimony.  Witnesses may testify, on the issue whether a train, in
   approaching a crossing, gave the statutory signals, that they could
   have heard such signals, had such signals been given, and that none
   were given, it appearing that the witnesses were in a mental attitude
   to hear such signals.  (See Book of Anno., Vol. 1, Sec. 8018, Anno. 18).

EVIDENCE:   Opinion Evidence—Value—Competency of Witness.   A
3  witness is competent to testify to the value of an automobile before
   and after an accident when it appears that he has seen cars of that
   make sold, and also second-hand cars bought and sold.

RAILROADS:   Accidents at Crossings—Contributory Negligence—Fail-
4  ure to Stop and Look.  Instructions are properly refused when they
   impute contributory negligence to the driver of a vehicle in approach-
   ing and going upon a materially obstructed railway crossing without
   stopping and looking, when it is conceded that the obstructions were
   such that no stopping and looking would have discovered the approach-
   ing train except substantially at the point of collision.

RAILROADS:   Accidents at Crossings—Signals Irrespective of Statute.
5  Principle reaffirmed that the failure of train operators, in nearing a
   public crossing, to signal the approach of the train may constitute
   negligence, irrespective of any statute so requiring.   (See Book of
   Anno., Vol. 1, Sec. 8018.)

Headnote 1:   33 Cyc. pp. 1041, 1127.   Headnote 2:   33 Cyc. p. 1083.
Headnote 3:  22 C. J. p. 695.   Headnote 4:   33 Cyc. p. 1141.   Headnote
5:   33 Cyc. pp. 958, 967.

Headnote 1:   21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L.
R. A. (N. S.) 702; 6 A. L. R. 681; 27 A. L. R. 1202; 22 R. C. L. 1020.
Headnote 2:   L. R. A. 1918A, 744; 22 R. C. L. 1055.   Headnote 4:  46
L. R. A. (N. S.) 702; 1 A. L. R. 203; 41 A. L. R. 405; 22 R. C. L. 1036.
Headnote 5:   22 R. C. L. 997.

*Appeal from Benton District Court.—*B. F. CUMMINGS, Judge.

JANUARY 11, 1927.

REHEARING DENIED APRIL 7, 1927.

Action at law to recover for the damage to an automobile struck by defendant's train. From a judgment for the plaintiff the defendants appeal.—*Affirmed.*

*G. W. Burnham, J. G. Gamble,* and *A. B. Howland,* for appellants.

*L. J. Kirkland,* for appellee.

VERMILION, J.—This case is before us for the third time. The former opinions will be found in 193 Iowa 1041 and 197 Iowa 1. The action is for the damage to appellee's automobile occasioned by its being struck by appellant's train. It is unnecessary to repeat in detail the circumstances of the collision or the description of the crossing and surroundings, as set out in the former opinions.

I. It is urged that the evidence is insufficient to sustain the verdict, in that it should be held, as a matter of law, that the driver of the automobile, appellee's wife, was guilty of contributory negligence. This claim is bottomed upon the fact that she did not stop the automobile, but attempted to pass in front of the train.

The main-line track, upon which the train was moving, was the third that the driver was required to cross. There was testimony that on the second track there were standing cars, one of which extended into the public highway to about the middle of the crossing planks. It is conceded that, as the automobile approached the crossing, the driver's view of the main track in

1. RAILROADS:
accidents at
crossings: at-
tempt to avoid
train.

the direction from which the train came was obstructed by buildings and the standing cars until she passed the end of the car standing partially in the highway. The driver was familiar with the crossing and its surroundings, and had observed the standing cars when she passed, a short time before the accident. She knew that the train was due and had not passed. The auto-

mobile was an open one, with the top up and no side curtains. There was testimony that no signals by bell or whistle were given from the approaching train; that the speed of the automobile had been reduced from about 15 to about 10 miles per hour at the crossing; and that it was running quietly. The driver testified that she looked as best she could, and listened for the train, but did not hear it, or any signal of its approach; that she looked when she passed the end of the car, at the first opportunity, when she could see in that direction, and then saw the train and a man trying to warn her by signals and voice. There was a conflict in the testimony as to where this man stood, and whether the driver could have seen him before she passed the standing car. She attempted to cross the track in front of the train, but the automobile was struck back of the center. The distance between the nearest rails of the main track and the track on which the cars stood was 20 feet. The automobile was about 15 feet long, and it was a little over 8 feet from the front bumper to the driver's seat. It is a matter of common observation that the sides of railroad cars and engines extend beyond the track rails. The jury would have been warranted in finding that, when the driver of the automobile first saw, or could have seen, the train, as she passed the end of the standing car, the front of the automobile was then only 8 or 10 feet from a point where it would be struck by a passing train on the main track. There was testimony that the automobile, at a speed of 10 miles per hour, could have been stopped by a person not under excitement in approximately 10 feet.

.  . It is well settled that a traveler is not required, as a matter of law, to stop before going upon a railway crossing. *Case v. Chicago G. W. R. Co.*, 147 Iowa 747; *Gray v. Chicago, R. I. & P. R. Co.*, 160 Iowa 1. The driver had a right to rely to some extent upon the giving of proper signals by those operating the train. *Corbett v. Hines*, 194 Iowa 1344, and cases cited. If there was no noise from the automobile that interfered with her hearing while it was in motion, it cannot be said that the driver was required to stop for the purpose of listening. Nor was she required to stop and look at a point where she could not have seen the train.

If she was warned by the man near the crossing of the approach of the train when she was at a point where she could

have stopped, it was her duty to have done so. But, as we have said, there was a conflict in the testimony as to when she could first have seen the man. If she did not see, and could not have seen, the train, or have received the warning of its approach, until she was past the standing box car, and the front of the moving automobile was then but 8 or 10 feet from the point where it would be struck by the train, we are not prepared to say, as a matter of law, that she should then have tried to stop in that limited distance and with that narrow margin of safety, and that it was negligence for her to then attempt by increasing her speed to cross in front of the engine. And this is true, although it would have been possible for a driver not under the influence of excitement to have stopped in that distance. She is not to be judged by what might now appear to have been the safer course. She was only required to exercise the care of an ordinarily prudent person under the circumstances and in the emergency then confronting her. The court properly so instructed. We are of the opinion that the question of contributory negligence was for the jury.

II. Three witnesses who testified that they did not hear any signals from the engine by bell or whistle as the train approached the crossing were permitted, over objection, to testify 2. RAILROADS: accidents at crossings: signals: positive and negative testimony. that they could have heard such signals, had they been given, and that none were given. Two of these witnesses were the driver of the automobile and her companion, who both said that they were watching for the train and listening for signals. The other was standing 20 feet from the track, heard the train whistle when at a distance, and before it came in sight, remained there until the train passed, and saw no steam coming from the whistle. Another witness, after stating his location with respect to the crossing, was permitted to say that he was in a position where he could have heard such signals. Some showing that the witnesses were in a position to hear and in a mental attitude to have heard the signals, had they been given, was essential to save their testimony to the effect that they did not hear any signals, from being merely negative, and insufficient to establish the absence of signals. *Hoffard v. Illinois Cent. R. Co.,* 138 Iowa 543; *Bannister v. Illinois Cent. R. Co.,* 199 Iowa 657. There was no error in receiving the testimony.

III.   Appellant complains that no sufficient qualification on the part of a witness to testify to the value of the automobile before and after the collision was shown.   He testified that he

3. EVIDENCE: opinion evidence: value: competency of witness.

had seen cars of that make and second-hand cars bought and sold.   What he said on cross-examination went to the weight of his testimony as to the value of the car, and did not require that his testimony be stricken.

IV.   Appellant assigns as error the refusal to give a requested instruction to the effect that, if the crossing was obstructed and the obstructions were of such a character that a

4. RAILROADS: accidents at crossings: contributory negligence: failure to stop and look.

reasonably prudent driver would not attempt to cross the track without stopping to see if the way was clear, then the failure of the driver to stop was contributory negligence.   The instruction did not relate to any duty on the part of the driver to stop and *listen,* but only to the duty to stop to *see* if the way was clear.   Error is also assigned on the giving of an instruction to the effect that what was required of a traveler approaching a railway crossing was that he should use ordinary care in looking and listening for approaching trains within a reasonable distance.   The complaint made of the latter is that it failed to submit to the jury the question whether the driver should have stopped, if by reason of obstructions she was unable to *see* the track.

It is conceded that the obstructions to the driver's view were such that she could not have seen the approaching train until she passed the end of the box car standing on the second track.   To have stopped before reaching that point would not have enabled her to see the train.   The exercise of reasonable care in *looking* for an approaching train did not require her to stop and look at a point where she could not see if a train was coming.

The authorities cited by appellant go to the proposition, which cannot be disputed, that, where the view is obstructed at some point, or, for any reason, the traveler cannot hear an approaching train, it is a question for the jury whether the exercise of ordinary care required him to look, or to stop and look, at some point where he could see (*Meyer v. Chicago, R. I. & P. R. Co.,* 134 Iowa 722) ; or to stop and listen (*Banning v. Chi-*

*cago, R. I. & P. R. Co.,* 89 Iowa 74; *Payne v. Chicago & N. W. R. Co.,* 108 Iowa 188) ; or to stop and both look and listen (*Reed v. Chicago, St. P., M. & O. R. Co.,* 74 Iowa 188; *Case v. Chicago G. W. R. Co.,* 147 Iowa 747). None of them go to the length of holding that he may be found guilty of contributory negligence in failing to stop and look at a point where he could not see the train. But that is the only proposition presented by the requested instruction, and the error assigned on the one given, so far as they relate to any duty on the part of the driver to stop before she could see the train. In so far as any duty to stop at any point where, under any view of the testimony, she could have seen the train was concerned, the question was covered by the instructions given, and the matter was put in a light more favorable to appellant than in the requested instruction. The court instructed, in substance, that, if the driver was warned of the approach of the train by the bell or whistle, or by a warning given by any other person, in time to have enabled her, in the exercise of reasonable care, to have stopped before reaching the track, and she failed to do so, she was guilty of contributory negligence.

It was undisputed by the appellee, and the driver so testified, that, when she passed the end of the standing car, she both saw the train and was warned of its approach by a man near the crossing. There was testimony from which it might have been found that she was so warned before she reached that point. There was a dispute in the testimony as to whether the bell was rung or the whistle sounded. This instruction imposed upon her the duty to stop, if in the exercise of ordinary care she could do so, after being warned; and, under the evidence, she was so warned at, if not before, the point where she could first see the train. Its effect, under the undisputed evidence, was to require a finding of contributory negligence if she failed to stop when she reached the point where she could see the train, if, in the exercise of reasonable care, she could have done so. There was no error in refusing the instruction asked, nor was the one complained of open to the objection made to it.

V. Appellant complains of an instruction on the subject of the duty of the defendant, in the absence of a mandatory statute,

5. RAILROADS: accidents at crossings: signals irrespective of statute. under some circumstances, to sound the whistle on an engine approaching a crossing in an incorporated town. The subject was considered on the last appeal of this case.

The instruction in question did not, as contended, make the existence of obstructions to the view the sole test of whether the whistle was required, but said that if, by reason of obstructions to the view, the crossing was dangerous, within the knowledge of the defendant, and the exercise of ordinary care in the operation of its trains required that the whistle of an approaching engine be sounded, a failure to sound it would be negligence. The instruction was not erroneous.

No reversible error appears, and the judgment is—*Affirmed.*

EVANS, C. J., and STEVENS and FAVILLE, JJ., concur.